746 So.2d 1017 (1999)
S.T.S.
v.
C.T.
2980075.
Court of Civil Appeals of Alabama.
August 13, 1999.
Rehearing Denied October 15, 1999.
*1018 Troy Grayson of Riverschase Legal Center, L.L.C., Birmingham, for appellant.
Donald R. Hamlin, Pell City, for appellee.

On Application for Rehearing
YATES, Judge.
The opinion of April 30, 1999, is withdrawn, and the following is substituted therefor. On October 2, 1998, the court awarded permanent custody of a minor child, N.S., to his maternal grandmother, C.T. The man determined to be that child's father, S.T.S., appeals.
The mother, on May 2, 1997, filed a complaint, asking the court to adjudicate the question of paternity, specifically to find S.T.S. to be the father of her two minor children, N.S. and S.S., and to order S.T.S. to pay child support for those children. On June 18, 1997, S.T.S. moved the court for a custody determination, because both children were in his physical custody. The maternal grandmother, on July 11, 1997, moved the court to be allowed to intervene, seeking temporary custody of the younger child, N. S.. She alleged that she had been the child's primary caretaker; that S.T.S. had not supported the child; that S.T.S. had used illegal drugs in the child's presence; and that the child had been deemed dependent by the State. Following an ore tenus proceeding on July 14, 1997, the court granted the grandmother's motion to intervene and, on July 31, 1997, awarded her temporary custody of N.S. The grandmother filed an amended petition in November 1997, alleging that both the mother and S.T.S. were unfit, and that S.T.S. had failed to establish a parent-child relationship with N.S., and arguing that she should be awarded sole legal and physical custody of N.S.
On October 8, 1998, the court awarded permanent custody to the grandmother, making the following findings:
"1. The Court is satisfied that clear and convincing evidence exists, to warrant *1019 a finding that [N.S.] is a dependent child, pursuant to [§ 12-15-1(10)f., g., h., j., k., and m., Ala.Code 1975].
"2. The Court finds that neither the mother ... nor the natural father [S.T.S] [is] suited to maintain custody of the minor child [N. S.], and that both parents have heretofore relinquished care, custody and control of said minor child. Further that [C.T.] is a fit and proper person to have the care, custody and control of [N.S.].
"3. The Court finds that it would promote the best interest and welfare of said minor child, for the child's custody to be placed with [C.T.] and that it would be disruptive and detrimental to the child's welfare, for the child to be removed from [C.T.].
"4. The Court finds that both parents have the financial ability to pay child support to the custodian, in accordance with Rule 32 of the Alabama Rules of Judicial Administration."
The record indicates that the mother and S.T.S. had lived together for several years and that N.S. and S.S. were born out of wedlock, in 1987 and 1981, respectively. The parties separated in 1988 and, by mutual consent, N.S. remained with the mother while S.S. moved with S.T.S. Testimony indicated that after the mother and S.T.S. had separated, N.S. lived in several locations for extended periods, including with his maternal grandmother, his aunt and uncle, and his paternal grandmother. While N.S. was attending his first or second year of school, he lived with S.T.S.
While in his mother's custody, N.S. was charged with truancy, in October 1996. The juvenile court entered a consent judgment in that case. According to testimony of N.S.'s probation officer, S.T.S. became involved in N.S.'s juvenile case and ensured that N.S. complied with the requirements of the consent judgment. N.S. went to live with S.T.S. in May 1997, and he resided there until he was removed by court order in August 1997.
There was disputed testimony regarding child support provided by S.T.S. for N.S. The mother and the maternal grandmother stated that S.T.S. had provided no support for N.S.; S.T.S. provided canceled checks and credit-card receipts for payments he had made on behalf of N.S. There was also disputed testimony regarding S.T.S.'s previous use of marijuana. The mother testified that S.T.S. had used marijuana when they lived together. Although S.T.S. admitted using marijuana in the past, he denied any current use and denied that either of the two children had seen him using illegal drugs or had obtained marijuana from his residence.
At the outset, we note the well-settled rule that matters regarding child custody rest soundly within the discretion of the trial court and that judgments regarding those matters will not be disturbed on appeal absent an abuse of discretion. Watson v. Watson, 634 So.2d 589 (Ala.Civ.App.1994). The court, applying statutory presumptions, determined that S.T.S. was the father of N.S. and, therefore, that S.T.S. was entitled to the presumption afforded parents over nonparents in custody disputes. See Ex parte Terry, 494 So.2d 628 (Ala.1986). In Terry, our supreme court held that in a custody dispute between a parent and a nonparent, the court may not award custody of the child to the nonparent without first finding, by clear and convincing evidence, that the parent is unfit. Id.; see also Ex parte D.J., 645 So.2d 303 (Ala.1994) (same presumption made applicable in a custody dispute between father of child born out of wedlock and a nonparent). This presumption may be defeated if the parent voluntarily forfeits custody of the child to the nonparent. Roden v. Colburn, 522 So.2d 290 (Ala.Civ.App.1988). Here, the record indicates that S.T.S. did not relinquish his right to the custody of N.S.rather, that the court removed N.S. from S.T.S.'s home and awarded custody of N.S. to the grandmother.
*1020 The father argues that the court erred in finding N.S. dependent; in applying a lesser standard in awarding permanent custody to the grandmother; and in not holding a hearing on the question of the fitness of the parents. The grandmother argues that the court had the discretion to find N.S. to be a dependent child, thereby allowing the court to utilize the dependency statutes of the juvenile code. This court has held that upon finding a child to be "dependent," the court may make any order of disposition necessary to protect the welfare of the child, including transferring legal custody of the child to a relative. § 12-15-71(a)(3)c, Ala. Code 1975; Jones v. Webb, 524 So.2d 374 (Ala.Civ.App.1988). This court held in W.T. v. State Dep't of Human Resources, 707 So.2d 647 (Ala.Civ.App.1997), that the parental presumption set forth in Ex parte Terry and Ex parte D.J. is not applicable in the dispositional phase of a dependency proceeding under § 12-15-71(a). The appropriate standard to be applied in the dispositional phase of a dependency proceeding is the "best interests of the child" standard. Id. Further, there is no requirement that the court find a parent unfit when dependency is found and custody is placed with a relative to protect the welfare of the child. W.T., supra.
The issue here is whether the court correctly applied a dependency statute to determine the appropriate custody placement of N.S. After thoroughly reviewing the juvenile dependency statutes and applicable caselaw, we conclude that this case was primarily a custody dispute and, therefore, did not fall within the scope of the dependency statute. The juvenile statutes require the filing of a petition alleging the facts constituting dependency, and they set out specific requirements regarding a dispositional hearing. See §§ 12-15-50, -52, and -65, Ala.Code 1975. In reviewing the cases relied on by the grandmother, we note that in each instance either a dependency petition was filed to commence the action, or evidence was presented regarding a parent's relinquishment of custody or the parent's fitness to adequately care for his or her child. It is clear that this case was initiated by the mother's filing a support/paternity complaint and that it became a custody case after S.T.S. sought custody. Although the grandmother alleged that N.S. had been deemed dependent, the action in which he had been deemed dependent related to a 1996 truancy charge in the juvenile court and was not related to this proceeding.
We find no evidence to support a conclusion that the father relinquished his custodial rights or that he is unfit to properly care for his son N.S. We note that throughout N.S.'s life the father has had contact with him. In addition, the father has reared S.S. since the mother and father separated, with the exception of a six-month period in 1996 when S.S. moved in with his mother. The record indicates no conduct by the father that can be deemed to be detrimental to the welfare of N.S., and it contains no evidence indicating that he is an unfit parent.
The father's weekly work schedule requires a four-day stay in New York; however, the father also has extended off-time, during which he remains in Alabama. The paternal grandmother provides an adequate support system in his absence. The father admitted using marijuana in 1991; however, there is no evidence that he has engaged in any illegal drug use in the past several years. The father appears to have expressed an interest in both of the children by participating in family activities and helping when N.S. was involved in the juvenile court truancy proceeding. In addition, we note that the "Home Evaluation Report" submitted by the Department of Human Resources found the father to have a suitable home for N.S. Again, no evidence indicates that the father relinquished his right to the custody of N.S., and N.S.'s custody had not been granted to the grandmother by a prior court order. The July 1997 order was temporary, pending a final custody determination. Therefore, the father never lost his presumption as the natural parent established in Ex parte Terry, supra; *1021 see also W.B.Z. v. D.J. 645 So.2d 300 (Ala. Civ.App.1993); Ex parte D.J., supra. When a case is more a custody case than a determination-of-dependency case, and the court relied on the dependency statute to find a child to be dependent and to award custody to a nonparent, that ruling will not stand. C.P. v. M.K., 667 So.2d 1357 (Ala.Civ.App.1994)(reversing trial court order where the evidence did not support a finding that a child was dependent and where the court had not considered the Terry standard in transferring custody from mother to a nonparent). Based on the foregoing, we conclude that the trial court erred in its findings. The judgment is reversed and the case is remanded for further proceedings consistent with this opinion. We note that on remand, the trial court, upon applying the correct standard, may very well reach the same conclusion. We are not dictating to the trial court the outcome that should be reached on remand.
OPINION OF APRIL 30, 1999, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.